IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ASHLEY ELLEN OROSCO,

        Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration,

        Defendant.

No. 3:15-cv-00880-HZ

OPINION & ORDER

Merrill Schneider
Schneider Kerr Law Offices
P.O. Box 14490
Portland, OR 97293

    Attorney for Plaintiff

//

//

//

//

1 - OPINION & ORDER

Billy J. Williams
United States Attorney
District of Oregon
Janice E. Hebert
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Jordan D. Goddard
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Ashley Ellen Orosco brings this action for judicial review of the Commissioner's final decision denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles XVI and II of the Social Security Act. I have jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). For the following reasons, the Commissioner's decision is reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on November 30, 2010, and for SSI on March 30, 2011. Tr. 181–194. In both applications, she alleges disability beginning on January 31, 2006. Tr. 181, 188. Her applications were denied initially and on reconsideration. Tr. 81–87, 88–89, 90, 118–121 (DIB, initial); 74–80, 88–89, 91, 122–125 (SSI, initial); 105, 106–115, 129–131 (DIB, reconsideration); 92–104, 132–133 (SSI, reconsideration). On July 25, 2013, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 41–73. On August

14, 2013, the ALJ found Plaintiff not disabled. Tr. 19–40. The Appeals Council denied review. Tr. 1–5.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on borderline intellectual functioning, hip and back pain, bipolar disorder, depression, post-traumatic stress disorder ("PTSD"), a smashed right hand, torn cartilage in her right knee, and various domestic violence injuries. Tr. 208. She maintains that these disabilities have made her "functionally unable to concentrate adequately in a competitive work environment" and "unable to perform normal work tasks." Pl.'s Brief at 2. She was 28 years old at the time of the hearing. Tr. 48. Though she did not finish high school, Plaintiff obtained a General Equivalency Diploma ("GED") at age sixteen. Tr. 49. Her past work includes punch press operator, retail clerk, stock clerk, and machine operator. Tr. 67–68, 209.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of

3 - OPINION & ORDER

impairments." Yuckert, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.

In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141–42; Tackett v. Apfel, 180 F.3d 1094, 1098–1100 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date through her date of last insured. Tr. 24. Next, at steps two and three, the ALJ determined that Plaintiff has severe impairments of abdominal pain, back strain, borderline intellectual functioning, affective disorder, and anxiety disorder, but that these impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 26.

At step four, the ALJ concluded that Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that Plaintiff can:

> [F]requently climb ramps and stairs, and occasionally climb ladders, ropes and scaffolds. She can occasionally kneel, crouch and crawl. She can frequently finger and handle with her right upper extremity. She can understand, remember, and carry out simple routine tasks, and make simple work-related decisions. She can have occasional, brief, superficial interactions with coworkers and the public, and should not have over the shoulder supervision.

Tr. 27. With this, the ALJ determined that Plaintiff is unable to perform any of her past relevant work. However, at step five, after considering her education level, work experience, RFC, and age, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the economy such as electronics worker, box folder, and machine feeder. Tr. 34. Thus, the ALJ determined that Plaintiff is not disabled. Id.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the

evidence are insignificant if the Commissioner's interpretation is a rational reading. Id.; see also Batson, 359 F.3d at 1193. However, this court cannot rely upon reasoning the ALJ did not assert when affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

**DISCUSSION**

Plaintiff argues that the ALJ made two errors in her analysis by (1) providing insufficient reasons for limiting the weight of Dr. Ronald Duvall's opinion and (2) failing to consider Listing 12.05C at step three of her analysis.

I.      Dr. Duvall's Opinion

Ronald Duvall, Ph.D., performed a neuropsychological exam of Plaintiff on February 19, 2013. Tr. 897–907. His exam consisted of a 90-minute interview and a battery of tests. Tr. 897. Based on the interview and Plaintiff's test results, Dr. Duvall concluded that Plaintiff is "unable to perform normal work tasks in a [sic] competitive employment." Tr. 904. Dr. Duvall noted Plaintiff's "limited verbal abilities" and poor performance on memory measures. Tr. 902, 904. Plaintiff's "[i]nability to read and perform work duties would likely render her very anxious and unable to persist in work tasks, and pace herself across a full work day." Tr. 904. "This young woman with no work history is so limited by her intellectual, memory, and language, and functional psychological problems[.]" Id. Dr. Duvall also noted that Plaintiff's full-scale IQ score was 75, but that she displayed language dysfunction in excess of what is usually expected in a person with an IQ of 75. Tr. 903.

Dr. Duvall also completed a mental residual functional capacities form. Tr. 908–910. There he concluded she was markedly impaired in the ability to (1) understand and remember

complex instructions; (2) carry out complex instructions; (3) interact appropriately with others; (4) interact appropriately with supervisors; and (5) interact appropriately with co-workers. Tr. 908–909. He opined she was extremely limited in the ability to make judgments on complex work-related decisions. Tr. 908.

The ALJ discussed Dr. Duvall's opinion in two places in her analysis. First, at step two, the ALJ referred to Dr. Duvall's opinion in regards to the severity of Plaintiff's impairments. Tr. 25. Upon review of the entire record, she did not adopt all of the cognitive impairments diagnosed by Dr. Duvall. Id. Second, when determining Plaintiff's RFC at step four, the ALJ ultimately afforded Dr. Duvall's opinion only "partial weight." Tr. 32. The ALJ first noted that Dr. Duvall's opinion did not account for Plaintiff's alleged lack of sleep and methadone use. Id. Next, the ALJ found that Dr. Duvall had inaccurate information regarding Plaintiff's educational history. Id. She stated that Plaintiff may have made "at least one false statement to Dr. Duvall, which affect[ed] [Plaintiff's] credibility, and lessen[ed] the persuasive value [of] Dr. Duvall's opinion." Id. Third, the ALJ explained that Dr. Duvall did not receive accurate information about Plaintiff's employment history. Id. In concluding, she found that giving partial weight to Dr. Duvall's opinion was consistent with the longitudinal record. Tr. 33.

Plaintiff argues that the ALJ erred by failing to explain how Plaintiff's inconsistent allegations undermined Dr. Duvall's opinion. Pl.'s Brief at 8. Defendant contends that the ALJ provided sufficient reasons to properly discount Dr. Duvall's opinion. Def.'s Brief at 7. I agree with Defendant.

Social Security law recognizes three types of physicians: treating, examining, and nonexamining. Holohan v. Massanari, 246 F.3d 1195, 1201–02 (9th Cir. 2001). "To reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing

7 - OPINION & ORDER

reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If the examining doctor's opinion is contradicted by another doctor's opinion, the ALJ may only reject the examining doctor's opinion by providing specific and legitimate reasons that are supported by substantial evidence. Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (citing Bayliss, 427 F.3d at 1216).

        The ALJ provided specific and legitimate reasons to afford Dr. Duvall's opinion only partial weight. The facts Plaintiff provided to Dr. Duvall conflict with facts found elsewhere in the record. Plaintiff told Dr. Duvall that she "wanted to get her GED," but "quit after 1 class meeting." Tr. 898. Regarding work, Plaintiff described job interviews as "Hell," and reported injuring her upper back while "working at age 17." Tr. 899, 900. But in her Work History Report, Plaintiff listed that she held four jobs in the last 15 years. Tr. 218–233. She also testified that she obtained her GED by age 16. Tr. 49, 209. Based on his interview with Plaintiff, Dr. Duvall remarked that Plaintiff has "mixed, multiple problems" which made her "functionally unable to concentrate adequately in a competitive work place." Tr. 904. He noted her inability to read, and stated she had "never held a job." Id. He concluded that "this young woman with no work history is so limited by her intellectual, memory, and language, and functional psychological problems, that she is unable to perform normal work tasks in a [sic] competitive employment." Id.

        The ALJ reasonably interpreted Dr. Duvall's opinion as relying on Plaintiff's alleged limited education, her alleged inability to obtain a GED, and her alleged "no work history" in forming his conclusions. Dr. Duvall made express references to her being an "8th grade dropout," who is "unable to read," and who "never held a job." Tr. 904. It is clear from reading his opinion that these facts were extremely relevant.

In a similar case, the plaintiff-claimant asserted that an ALJ provided inadequate reasons for rejecting the opinion of an examining physician. Chaudhry, 688 F.3d at 670. There, the ALJ gave only partial weight to the examining physician's opinion. Id. at 671. The ALJ mentioned that "[the physician's] opinion was predicated in part on her erroneous belief that [the plaintiff's] wheelchair and cane were prescribed." Id. The court agreed that the plaintiff's non-prescribed use of the wheelchair influenced the examining physician's opinion. Id. The court affirmed the ALJ, concluding that the ALJ provided specific and legitimate reasons for giving less weight to the doctor's opinion. Id.

Like the examining physician in Chaudhry, Dr. Duvall's opinion of Plaintiff is predicated on an "erroneous belief." The facts regarding Plaintiff's lack of work history and inability to obtain a GED are emphatically repeated in his conclusion. Plaintiff's inconsistent self-reporting undoubtedly factored into Dr. Duvall's examination, much like how the non-prescribed use of a wheelchair by the plaintiff in Chaudhry factored into the examining physician's opinion in that case. The result is the same here: the ALJ did not err in limiting the weight of Dr. Duvall's opinion as she gave specific and legitimate reasons supported by substantial evidence in the record to discount his opinion.

II.     Listing 12.05C

Plaintiff maintains that she has a prima facie case for disability under 12.05C of the Listing of Impairments, and that the ALJ erred at step three when she failed to consider this listing. The Listing of Impairments describes the major body systems impairments that the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525. Listing 12.05 pertains to intellectual disabilities and has a different listing structure than the other mental disorder listings.

9 - OPINION & ORDER

20 C.F.R. § Pt. 404, Subpt. P, App. 1. Listing 12.05 contains an introductory paragraph with four sets of criteria, A through D. Id. A claimant must meet both the 12.05 introductory requirement and at least one of criteria A through D in order to be considered disabled under the listing. Id.; Gomez v. Astrue, 695 F. Supp. 2d 1049, 1053 (C.D. Cal. 2010). The introductory requirement for 12.05 is met if "the evidence demonstrates or supports onset of impairment before age 22." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.05. The requirements under criteria C include, "a valid verbal, performance, or full scale IQ of 60 through 70, and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. When verbal and full scale IQ scores differ, the lowest of the two scores must be used. Id.; Gomez, 695 F. Supp. 2d at 1053. The additional impairment must be a "severe" impairment as defined in §§ 404.1520(c) and 416.920(c). Id. However, the Ninth Circuit has held that the additional impairment need only impose "a significant work-related limitation of function." Gomez, 695 F. Supp. 2d at 1061 (citing Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987)). Significant is "more than minimal but less than severe." Id.

Defendant asserts that because the ALJ rejected the validity of Dr. Duvall's test scores, the ALJ did not err in failing to discuss 12.05C. Alternatively, Defendant argues that even if the ALJ erred, such error is harmless because Plaintiff does not meet the requirements of 12.05C in any event. Def.'s Brief at 10. I disagree. While the ALJ afforded Dr. Duvall's opinion less weight, and rejected the cognitive diagnoses he provided, it is unclear as to whether she actually found Plaintiff's IQ scores invalid. Moreover, Plaintiff's education and limited work history may factor into the applicability of 12.05C.

In Gomez, the court held that substantial evidence did not support an ALJ's determination that the plaintiff did not meet the criteria of 12.05C. Id. at 1049. The record in that

case showed that the plaintiff had a verbal IQ score of 63, a detailed history of difficulties in school, and questionable work history. Id. at 1054, 1059, 1061. Though the ALJ afforded less weight to the opinion of the doctor that conducted the IQ exams, he did not expressly address IQ score validity or the applicability of 12.05C in his written opinion. Id. at 1056. Concerning the plaintiff's education, the plaintiff was tested for possible "special class placement" and assigned an Individual Educational Plan in elementary school, and dropped out by the ninth grade. Id. at 1060. Most of his jobs were considered semiskilled, but he never held them for significant periods of time. Id. at 1059. The job titles he held were also not indicative of the actual work he performed. See Id. ("the record is ambiguous as to whether plaintiff's job as actually performed was semiskilled."). The court also noted that the plaintiff had been unemployed for the past seven years leading up to his hearing. Id. In its decision to reverse and remand, the court considered the ALJ's "silent disregard of the verbal IQ [score]" as an error, found the plaintiff's educational history indicative of deficits during the developmental period, and noted his work history was consistent with a low level of intellectual functioning. Id. at 1056, 1059, 1061.

     Here, Plaintiff has the requisite IQ score, because she scored a 70 on her verbal comprehension exam. Tr. 901. But the record is unclear as to whether the ALJ found this to be a valid measure. Though the ALJ acknowledged Plaintiff's scores, she never expressed an opinion as to whether the scores were valid. While she rejected Dr. Duvall's functional limitation opinion, she never remarked on the validity of the test scores themselves. Her "silent disregard" of the scores and failure to apply 12.05C is an error. See Fanning, 827 F.2d at 633 (reversing and remanding to determine whether a claimant met 12.05C after the claimant was found to have the requisite IQ score).

Furthermore, the record here is unclear regarding Plaintiff's educational and work history. Plaintiff did not provide any education records—in fact, there is only conflicting information regarding Plaintiff's enrollment in special education and GED attainment. Tr. 49, 64–65, 898, 904. Additionally, like the plaintiff in Gomez, Plaintiff here obtained semiskilled work, but according to her Work History Report, three out of the four jobs she listed lasted for only seven months or less. Tr. 218. Plaintiff has also been unemployed since 2006. Tr. 50–51. Under Gomez, this type of work history seems to be consistent with "a low level of intellectual functioning." Thus, both her educational and work history raise legitimate issues as to whether she had an onset of impairment before age 22.

Because the record contains sufficient evidence to raise the possibility that Plaintiff may meet the criteria for 12.05C, but does not conclusively establish her entitlement to this finding, the ALJ, as the factfinder, should consider the evidence in the first instance. Remand for additional proceedings is appropriate. See Garrison v. Colvin, 795 F.3d 995, 1020 (9th Cir. 2014) (remand is appropriate when the record is not fully developed and additional administrative proceedings would be useful.).

//
//
//
//
//
//
//
//

**CONCLUSION**

Based on the foregoing, the Commissioner's decision is reversed and remanded for additional proceedings.

IT IS SO ORDERED.

Dated this \_\_18\_\_ day of \_\_\_April_____, 2016

_____
MARCO A. HERNÁNDEZ
United States District Judge

13 - OPINION & ORDER